# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

LAFONDA G. TURMAN,           )
                             )
        Plaintiff,      )
                             )
v.                           )     Case No. CIV-17-122-SPS
                             )
COMMISSIONER of the Social   )
Security Administration,     )
                             )
        Defendant.      )

## OPINION AND ORDER

The claimant Lafonda G. Turman requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case remanded to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 104). She completed eleventh grade, and has previously worked as a hotel housekeeper (Tr. 97, 288). The claimant alleges she has been unable to work since her application date of April 30, 2015, due to mental problems (Tr. 287).

## Procedural History

On March 26, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written decision dated March 31, 2016 (Tr. 89-99). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with the additional limitations of performing detailed but not complex tasks with routine supervision, having only occasional contact with co-workers and supervisors, and having no work-related contact with the general public (Tr. 93). The ALJ concluded that although the claimant could not perform her past relevant work, she

was nevertheless not disabled because there was work she could perform, *i. e.*, inspector packer, bench assembler, and routing clerk (Tr. 97-98).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess her RFC as to both physical and mental impairments, and (ii) failing to prove there were jobs she could perform at step five. The Court agrees that the ALJ erred in assessing the evidence as to the claimant's physical impairments, and the decision of the ALJ should be reversed and remanded.

The ALJ determined that the claimant had the severe impairments of affective disorders/depression and polysubstance abuse in remission, as well as the nonsevere impairments of diabetes, hypertension, and hepatitis (Tr. 91). The medical evidence relevant to this appeal reveals that the claimant received mental health treatment at Carl Albert Community Mental Health Center, including inpatient treatment from April 10, 2015 through April 24, 2015. The claimant had been admitted for an emergency detention following reports of depression, fatigue, and suicidal ideation (Tr. 360). Upon discharge, her mood was much improved, and homicidal ideation, hallucinations, and crying had resolved (Tr. 362). Her discharge diagnoses included major depressive disorder, recurrent, severe, with psychotic features, along with dysthymic disorder, alcohol dependence in remission (Tr. 363). Her hypertension, diabetes, Hepatitis C, and hyperlipidemia were noted as Axis III diagnoses as well (Tr. 363).

Several months later, in August 2015, the claimant reported that she was out of her medications and hearing voices again (Tr. 398).

While in the inpatient mental health treatment facility, the claimant's diabetes was noted to be unmanaged. She could not afford insulin, and therefore was prescribed oral medication that she had also not been taking, possibly due to the cost (Tr. 410). The claimant also received medication management treatment for diabetes, hypertension, and recurring complaints of sores and scabs on her arms, with her treating nurse practitioner (Tr. 383-394, 420-430). The nurse practitioner noted in March 2016 that the claimant needed to start using insulin, but the claimant could not afford to do so and appeared to be waiting for her disability application to be approved in order to be able to afford it (Tr. 429).

State reviewing physicians considering the claimant's mental impairments determined she was moderately limited in the three typical areas of the ability to understand and remember detailed instructions, carry out detailed instructions, and interact with the general public (Tr. 167-169, 176-180). They concluded that she could perform simple and some complex tasks with routine supervision, relate to others on a superficial work basis, and adapt to a work situation (Tr. 169, 180). The claimant was not considered to have any severe physical impairments.

In his written opinion at step two, the ALJ found the claimant's diabetes, hypertension, and hepatitis to be nonsevere impairments. At step four, he summarized the claimant's hearing testimony, as well as the treatment notes from the claimant's nurse practitioners, and the medical records from her inpatient mental health treatment (Tr. 95-97). He noted that she was not entirely compliant in taking medications, and raised questions regarding her sparse work history in relation to her claims of inability to work

(Tr. 97). He also found the claimant not persuasive in light of her past criminal history, and ultimately concluded that she was not disabled (Tr. 97).

Following the ALJ's decision, the claimant submitted additional evidence to the Appeals Council, as well as a Functional Capacity Evaluation. Additional treatment notes from the claimant's nurse practitioner reflect that her diabetes continued to be uncontrolled because she could not afford medication, and she had been confirmed to have chronic viral Hepatitis C (Tr. 11, 29, 55). She also continued to have multiple lesions on her arms, legs, and back (Tr. 16). The claimant's GI specialist, Dr. Herraka, complete a Medical Source Statement as to the claimant's physical impairments, in which he indicated that the claimant could lift/carry twenty pounds occasionally and ten pounds frequently, and that standing, walking, and sitting were not affected by her impairment (Tr. 63). He further indicated that she was limited in pushing/pulling due to cirrhosis of the liver (a result of the Hepatitis C) and risk of bleeding (Tr. 64). He checked boxes indicating that the claimant could occasionally perform postural limitations, and could only have limited exposure to environmental factors (Tr. 64-65).

On December 9, 2016, Doin Dahlke, a Certified Functional Evaluator, completed a Functional Capacity Evaluation of the claimant (Tr. 67-81). He concluded that the claimant demonstrated a maximum ability to lift/carry up to fifteen pounds occasionally, and up to zero pounds frequently, and that she put forth a consistent and reliable effort on the testing (Tr. 67). He further stated that the claimant demonstrated a low tolerance for repeated lifting/carrying and did not demonstrate the ability to perform material handling on a frequent basis. He found she had poor tolerance for general mobility activities, and could

only occasionally walk, stoop, kneel, crouch, climb stairs, push/pull a cart, and stand (Tr. 68). He also noted that she required frequent changes in postural position and would need a sit/stand at will option, as well as additional rest breaks of five to ten minutes, up to four times a day (Tr. 68). He concluded that she demonstrated the ability to perform sedentary work (Tr. 69).

The Court first notes that the ALJ is required to consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). *See also Hill v. Astrue*, 289 Fed. Appx. at 292 ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Here the ALJ failed to account for the claimant's nonsevere impairments in formulating her RFC, which means that the RFC does not wholly account for the claimant's impairments. Additionally, this reflects a failure to

assess the combined effect of all the claimant's impairments – both severe and nonsevere – for her RFC.

Furthermore, the ALJ appeared to ignore the repeated evidence that she could not afford her medications, and also appeared to hold this against her in the form of faulting her for noncompliance. The Court notes that this inability to afford medication should not be held against her. *See, e. g.*, *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("'[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.'") [unpublished opinion], *quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

The Court's reason for reversal is bolstered by the additional evidence submitted to the Appeals Council, particularly the functional capacity evaluation. The Appeals Council was required to properly consider this evidence if it was: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision," *see Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995), but failed to do so here, citing to the fact that the information pertained to a later time. Evidence is new if it "is not duplicative or cumulative," and this evidence qualifies as such. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*,

83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). Here, this evidence supports the claimant's assertion that she cannot perform the full range of work at all exertional levels, and indeed has additional limitations with regard to handling materials. In finding the claimant could perform the standing, walking, and handling requirements of all ranges of work, the ALJ relied, at least in part, on the limited evidence (or lack thereof) related to the claimant's physical impairments.

Finally, the evidence is chronologically relevant because it supports the claimant's diagnoses of physical impairments that limit her ability to perform work, and provides insight into the functional effects therefrom. *See Palomarez v. Colvin*, 2015 WL 13658668, at *5 (D. N.M. Aug. 5, 2015) ("[T]he Tenth Circuit has explained that evidence submitted to the Appeals Council is temporally relevant when it corroborates a prior diagnosis and/or a claimant's hearing testimony, and does not require the evidence newly submitted to the Appeals Council to pre-date the ALJ's order."), *citing Padilla v. Colvin*, 525 Fed. Appx. 710, 713 (10th Cir. 2013) ("[T]he psychological report corroborates an anxiety diagnosis reported by Mr. Padilla's treating doctor, Dr. Evans, prior to the hearing, as well as Mr. Padilla's hearing testimony. Meanwhile, his intellectual functioning evaluation relates to and augments Dr. Evans' earlier report that he could not read or write. As to the audiological report, Mr. Padilla identifies the fact that he testified about his hearing loss during the hearing before the ALJ. The additional evidence thus relates to the time period before the ALJ's decision.").

The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. § 416.1470(b), so the newly-submitted

evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, but the Appeals Council should have considered the additional evidence in order to properly determine whether the ALJ's decision was supported by substantial evidence. *Padilla*, 525 Fed. Appx. at 713.

In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ did not have the opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, and the Commissioner's decision must therefore be reversed and the case remanded to the Appeals Council for further proceedings. On remand, the Appeals Council should properly evaluate *all* the evidence in the record. If the subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

Because the ALJ failed to properly conduct an analysis of the evidence and the claimant's RFC, and the Appeals Council further failed to properly evaluate the evidence submitted, the decision of the Commissioner should be reversed and the case remanded to the Appeals Council for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**